## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **JASON GREMILLION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:05cv484-ID** |
| | ) | **(WO)** |
| **WALGREEN CO., INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

Before the court is a motion for summary judgment filed by Defendant Walgreen Co., Inc. ("Walgreen"), on March 15, 2006.  (Doc. No. 15.)  A brief and an evidentiary submission accompany the motion.  (Doc. Nos. 16-17).  Plaintiff Jason Gremillion ("Gremillion") submitted a response in opposition on March 30, 2006 (Doc. No. 19), to which Walgreen filed a reply on April 6, 2006.  (Doc. No. 20.)  In this lawsuit, Gremillion, an African-American male, sues his employer, alleging discriminatory failure to promote on the basis of race, and brings his claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981").

After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Walgreen's motion for summary judgment is due to be granted.

## II.  JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations of both.

## III.  STANDARD OF REVIEW

A court considering a motion for summary judgment must construe the evidence and make factual inferences in the light most favorable to the nonmoving party.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted).  This determination involves applying substantive law to the substantive facts that have been developed.  A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence developed.  See id. at 248; Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  The burden then shifts to the nonmoving party, which "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Summary judgment will not be entered unless the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.  See id. at 587.

## IV.  STATEMENT OF FACTS

Viewed in the light most favorable to Gremillion, the following facts constitute the facts material to resolution of the instant motion for summary judgment.

In May 2003, Gremillion began work as a part-time service clerk at a Walgreen store located on the South Boulevard in Montgomery, Alabama ("South Boulevard store").  In addition to working at Walgreen, Gremillion at the time was pursuing a full-time course of study at Alabama State University, with an anticipated graduation date in the summer of 2006.  In the fall of 2003, at his request, Gremillion moved into the photo department at the Southern Boulevard store.  In the photo department, Gremillion primarily performed one-hour photo duties using a Kodak Gretag photo developing

3

machine.  During Gremillion's employment at the South Boulevard store, Gremillion was supervised by Store Manager James Freeman ("Freeman").

In June 2004, Gremillion told Freeman, a Caucasian male, of his interest in becoming the head photo specialist at a new Walgreen store on Perry Hill Road in Montgomery which at the time was under construction ("Perry Hill store").  Freeman directed him to speak to JoAnn Jones ("Jones"), who served temporarily as the manager responsible for filling job vacancies at the Perry Hill store.  At Freeman's suggestion, Gremillion approached Jones about his interest in filling the head photo specialist position at the Perry Hill store.  He told her that he "would be more than happy to fill the position of head photo tech at the Perry Hill store and that [he] had already requested a transfer" to that store.  (Gremillion Dep. at 28.)  Gremillion also informed Jones that he would be able to work full-time, if selected as the head photo specialist, because he would be able to schedule all of his college classes after 5:30 p.m.  According to Gremillion, Jones further inquired about his class schedule and told him that she would "get back with" him.[1]  (Id.)

---

[1] At this juncture, the parties present divergent facts.  Jones says that she does not recall that Gremillion informed her that he wanted to be promoted to the head photo specialist position, but only that he desired a transfer to the Perry Hill store in the photo department.  For present purposes, the court accepts Gremillion's version of the facts as true.

Jones approved Gremillion's transfer to the new store, but placed him in the position of photo specialist, not head photo specialist.  The Perry Hill store opened in July 2004, and Gremillion continued his part-time work at this store.

Thereafter, Jones selected Renee Hand ("Hand"), a Caucasian female, to fill the full-time head photo specialist position at the new Perry Hill store.  During construction of that store, a marquee on the premises publicized that interested individuals should submit an application for employment on Walgreen's website.  Hand submitted an application on-line for employment at the new store.  It is undisputed that Gremillion did not.

Gremillion filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 22, 2004, contending that in July 2004 he was denied a promotion to the position of head photo specialist at the Perry Hill store.  At the end of October 2004, Gremillion left his employment with Walgreen and started working full-time at another business.  In or about December 2004, the head photo specialist position at the Perry Hill store became open, and Gremillion applied.  He was selected for the position by the then-current Store Manager Leland Wallace.  On the date Gremillion filed his response to the instant motion for summary judgment, Gremillion still was employed in the position of head photo specialist at the Perry Hill store.

After the EEOC issued Gremillion a right-to-sue letter, he filed this lawsuit on May 19, 2005, alleging racial discrimination in the denial of the promotion to head photo

specialist, in violation of Title VII and § 1981.  (Am. Compl. (Doc. No. 13).)  Walgreen

has moved for summary judgment.


## V.  DISCUSSION

### A.  Abandoned Claims

Walgreen's first ground for summary judgment is premised on the theory of

abandonment.  Walgreen asserts that Gremillion has abandoned his allegation of a

"pattern and practice" of racial discrimination.  (Walgreen Reply at 1 n.1 (Doc. No. 20).)

The court agrees.

Although Gremillion alleges in his Amended Complaint that Walgreen has

"exhibited a pattern of racial discrimination" (Am. Compl. ¶ 23 (Doc. No. 13)),

Gremillion confines his response to the pending motion for summary judgment to a

discussion of his claim that the denial of a promotion to the position of head photo

specialist in July 2004 constitutes unlawful race discrimination.  In opposing summary

judgment, Gremillion cannot rest on his pleadings, see Celotex, 477 U.S. at 324 (citing

Fed. R. Civ. P. 56(e)), and "grounds alleged in the complaint but not relied upon in

summary judgment are deemed abandoned."  Resolution Trust Corp. v. Dunmar Corp., 43

F.3d 587, 599 (11th Cir. 1995).  Accordingly, the court finds that Gremillion has

preserved for review only his claim that in July 2004 he was denied a promotion to the

position of head photo specialist at the Perry Hill store.

6

B. <u>Failure to Promote</u>

*1. Title VII Jurisdictional Requirements*

Walgreen has not challenged Gremillion's allegations in the Amended Complaint that Gremillion fulfilled the jurisdictional requirements for filing a Title VII lawsuit as to his claim for race discrimination in the denial of the July 2004 promotion to head photo specialist at the Perry Hill store.  (Am. Compl. ¶ 1 (Doc. No. 13)); <u>Forehand v. Florida State Hosp. at Chattahoochee</u>, 89 F.3d 1562, 1567 (11th Cir. 1996) ("Before instituting a Title VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge.").  The court, therefore, finds that, for purposes of ruling on the instant summary judgment motion, these Title VII prerequisites have been satisfied.

*2. The Merits*

Gremillion brings his failure-to-promote claim pursuant to Title VII and § 1981, seeking to prove that Gremillion intentionally discriminated against him on the basis of his race.  Because Gremillion relies on circumstantial evidence to prove his claim, the allocation of proof shifts in accordance with the three-step procedure established in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1972).[1]  In the first McDonnell

Douglas phase, the plaintiff must produce evidence sufficient to make out a prima facie

case, thus giving rise to a presumption that the employer unlawfully discriminated against

him or her in taking the alleged adverse employment action.  See St. Mary's Honor Ctr. v.

Hicks, 509 U.S. 502, 506 (1993).

Next, the employer must rebut this presumption by producing evidence that the

negative employment action was motivated instead by a legitimate, nondiscriminatory

reason.  Id. at 509.  The employer's "burden is one of production, not persuasion; 'it can

involve no credibility assessment.'"  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S.

133, 142 (2000) (quoting St. Mary's Honor Ctr., 509 U.S. at 509).  Finally, to avoid

summary judgment, the plaintiff must respond with evidence, which may include

previously produced evidence establishing a prima facie case, which would allow a

reasonable jury to conclude that the reasons given by the employer were not the real

reasons for the adverse employment decision.  See Combs v. Plantation Patterns, 106

F.3d 1519, 1528 (11th Cir. 1997); see also Reeves, 530 U.S. at 143.  "The result of this

three step dance is that the burden is always on plaintiff to show that defendant's action is

---

[1] The Title VII circumstantial evidence approach to proving employment discrimination also applies to claims brought pursuant to § 1981; thus, the analysis is the same under both statutes.  See Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir. 2002) ("[A]s we have repeatedly held, both of these statutes [i.e., § 1981 and Title VII] have the same requirements of proof and use the same analytical framework.").

discriminatory." Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1081 (11th Cir. 2005) (per curiam).

As to the prima facie elements applicable to Gremillion's failure-to-promote claim, Walgreen appropriately cites Summerlin v. M & H Valve Co., No. 05-11030, 2006 WL 93131 (11th Cir. 2006).  To satisfy the prima facie elements, a plaintiff must demonstrate that (1) he "is a member of a protected minority; (2) he was qualified and applied for the promotion; and (3) he was rejected despite these qualifications." Id. (citing Walker v. Mortham, 158 F.3d 1177, 1185-87 (11th Cir. 1998)).

Walgreen does not dispute that "Gremillion is a member of a protected class, that he was arguably minimally qualified for the head photo specialist position in the summer of 2004," and that Hand was selected for the position, rather than Gremillion.  (Walgreen Reply at 2 (Doc. No. 20).)  Walgreen, however, argues that Gremillion cannot establish a prima facie case of discrimination in promotion because "he neither applied for that job, nor does he establish any legal basis to excuse him from the application requirement." (Id.)  In response, Gremillion does not dispute that he did not complete a formal application for the open position of head photo specialist at the Perry Hill store. (Gremillion Resp. at 8 (Doc. No. 19).)  He asserts, however, that he was not required to do so because "[Walgreen] did not conduct a proper selection process by posting the position" and that, therefore, it is sufficient that he expressed his interest in being promoted to the head photo specialist position to Jones in or about June 2004.  (Id.) Gremillion relies on Carmichael v. Birmingham Saw Works, 738 F.2d 1126 (11th Cir.

9

1984).  (See id.)  Walgreen does not directly address whether Gremillion's evidence that he orally told Jones that he wanted to be the head photo specialist suffices to establish the "applied for" element of the prima facie case; instead, Walgreen merely says that it cannot be deemed to have "discriminate[d]" against Gremillion by selecting an individual who made an on-line application in favor of an individual who did not.  (Walgreen Br. at 10 (Doc. No. 16).)  For the reasons to follow, the court agrees with Gremillion that he has satisfied the "applied for" prong, but the court reaches its conclusion for different reasons than those advocated by Gremillion.

In Carmichael, involving a Title VII failure-to-promote claim, the Eleventh Circuit carved out an exception to the "applied for" element of the prima facie case.  738 F.2d at 1132-34.  It held that, when a company employs an informal method of advertising a vacancy, such as by "word of mouth," which is ineffective in conveying notice to the plaintiff of the job opening, the plaintiff may establish a prima facie case, thereby raising a presumption of discrimination, without demonstrating that he or she applied for an available promotion.[2]  See id. at 1132-34.  Instead, the plaintiff merely has

---

[2] The Carmichael court explained that subjective informal processes "can lead to racial discrimination, both because important information may be available only to whites and because such procedures place no check on individual biases. . . .  For this reason we have held that '[t]he failure to establish fixed or reasonably objective standards and procedures for hiring is a discriminatory practice.'"  738 F.2d at 1133; see also Roberts v. Gadsden Mem. Hosp., 835 F.2d 793, 798 (11th Cir. 1988) (observing that in Carmichael "[t]he promotion process was completely informal and provided no checks against racial bias").  In Carmichael, the employees, who "overwhelmingly" were Caucasian, generally learned of job openings by "word of mouth" while eating lunch together, but the plaintiff "was unlikely to have much access to the information grapevine," because his Caucasian coworkers made him feel unwelcome to join them during lunch.  738 F.2d at 1133 n.2

10

to demonstrate that the employer "had some reason or duty to consider him [or her] for the post."  Id. at 1133; see also Vessels v. Atlanta Indep. School Sys., 408 F.3d 763, 768 (11th Cir. 2005) ("[W]here an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second [prima facie] prong that he applied for the position--only that the employer had some reason to consider him for the post.").  In Carmichael, a "reason" arose from the fact that the plaintiff had expressed a general interest in obtaining a promotion within the company.  738 F.2d at 1134.  Additionally, the defendant's "subjective promotion procedures imposed upon the defendant a duty to consider for any open position all employees who might reasonably be interested in the position."  Id.

In this case, the court finds that Gremillion cannot rely on the Carmicheal exception.  Admittedly, the evidence is scant as to Walgreen's policies governing the process by which employees apply for promotions and the methods used by Walgreen to announce vacancies internally.  The parties have not submitted or alluded to any written policies.[3]  There is, though, evidence that, during construction of the Perry Hill store, a marquee on the premises publicized that interested individuals should submit an application for employment on Walgreen's website.  The court finds that this method of publicizing the vacancies is neither informal nor subjective.  Unlike the subjective

---

[3] The court is aware that Gremillion has complained that the openings were not "posted" in a prominent place in his store, but he has not submitted any evidence that Walgreen had a policy requiring posting in this manner.  (Gremillion Dep. at 55.)

notification method in Carmichael, which placed considerable discretion in the employer
as to whom to communicate the notice, see id. at 1133, the website and the marquee were
not selective as to their targeted audiences; rather, the marquee was visible to all who
passed by, and the website was accessible by the public.  The means employed by
Walgreen to solicit applications for vacant positions at the Perry Hill store simply are not
comparable to the "informal, secretive selection process" criticized in Carmichael.
Roberts, 835 F.2d at 793 (citing Carmichael, 738 F.2d at 1133).  Gremillion has
presented no evidence indicating that this procedure utilized by Walgreen had the effect
of excluding African-Americans from learning of the job vacancies at the new store.  See
Carmicheal, 738 F.2d at 1133 ("We have recognized that such subjective procedures can
lead to racial discrimination, both because important information may be available only to
whites and because such procedures place no check on individual biases.").

     Additionally, in this case, Gremillion undisputedly knew of the job opening at the
Perry Hill store; thus, Carmicheal's concern as to the unfairness associated with an
employer's informal method of notification where the plaintiff "did not know about [the
job opening]" is not present in this case.  See 738 F.2d at 1133.

     Based on the foregoing, the court finds that the facts of this case do not fit within
the exception articulated in Carmichael.  Nonetheless, for a different reason, the court
finds that the fact that Gremillion did not make a formal application does not preclude
him from establishing a prima facie case given the particular facts presented which the
court has viewed in the light most favorable to Gremillion.

Having learned of the job opening at the Perry Hill store for a head photo specialist, Gremillion specifically informed the decisionmaker, i.e., Jones, that he wanted that job.  Although Walgreen complains that Gremillion did not submit a formal on-line application, there is no evidence in the record that Walgreen deemed a formal on-line application a prerequisite to consideration for an open position, but there is some evidence to the contrary.  Namely, Gremillion testified that, after he told Jones that he wanted to be considered for the head photo specialist position at the Perry Hill store, Jones told him that she would "get back to" him and did not ask him to submit a formal application on-line.  Jones was the final decisionmaker on the hiring matter, and the court finds that Gremillion's testimony as to Jones' response, if believed by the jury, is evidence from which a jury reasonably could conclude that Gremillion's oral interest was an acceptable method of application in the mind of the decisionmaker and, therefore, sufficient pursuant to Walgreen's personnel practices for him to be considered for the position.[4]  Similarly, a jury plausibly could conclude that Jones' statement that she would "get back to" him caused Gremillion to believe that Jones was considering him for the position and that further or formal application was unnecessary.  See Lloyd v. WABC-TV, 879 F. Supp. 394, 401 (S.D.N.Y. 1995).  Accordingly, the court finds that Gremillion has raised a factual dispute for trial as to whether he "applied for" the position

---

[4] The court notes also that Freeman, Gremillion's supervisor, made no mention of a requirement that Gremillion submit a formal application on-line for the job opening at the Perry Hill store, when Gremillion mentioned the prospect to him.  (Gremillion Dep. at 25.)

when he told Jones, the decisionmaker, that he was interested in the position of head photo specialist at the Perry Hill store.[5]

The court recognizes that the prima facie paradigm, discussed above, must be adapted in order to fit the facts of this case.  The Supreme Court, however, has repeatedly cautioned that "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'"  Swierkiewicz v. Sorema, N. A., 534 U.S. 506, 512 (2002) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)); see also McDonnell Douglas, 411 U.S. at 802 n.13 ("[T]he specification . . . of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.").  The ultimate prima facie question merely requires a plaintiff to "show[ ] actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act."  Furnco Const. Corp., 438 U.S. at 575-76 (internal citations omitted).  Based on the overriding inquiry put forth by the prima facie elements, the court finds that Gremillion has raised a presumption of discrimination.

_____

[5] The court notes that the facts are distinguishable from those which the court discussed in its opinion entered this same date in Wilson v. Walgreen, Civ. No. 2:05cv465-ID (M.D. Ala. June 27, 2006).  In Wilson, the court found that the plaintiff's general statement expressing a desire to "make more money," without referencing the specific promotional position at issue, was insufficient to satisfy the "applied for" requirement of the prima facie case.  See id. , slip. op. at 15 (relying on Smith v. J. Smith Lanier & Co., 352 F.3d 1342 (11th Cir. 2003) (per curiam)).

Proceeding to the second and third stages of the <u>McDonnell Douglas</u> analysis,

Walgreen has the burden of justifying its decision by presenting a legitimate, non-

discriminatory reason for its failure to promote Gremillion to the position of head photo

specialist.  Walgreen focuses on the qualifications of Hand as compared to Gremillion.

Walgreen asserts that it hired Hand, and not Gremillion, because at the time of hire

(1) Hand had experience working on Fuji film developing machines, while Gremillion did

not; (2) Hand had prior supervisory experience working in a photo lab, unlike Gremillion;

(3) Hand had a total of twenty-one months of photo lab experience, as compared to

Gremillion's year of experience; (4) Hand was available for full-time work and Jones "did

not believe" that, as "a full-time college student," Gremillion "could effectively perform

the full-time duties" of the head photo specialist position; and (5) Hand had a "friendly,

outgoing demeanor."  (Jones Decl. ¶¶ 4, 7 (Ex. to Doc. No. 17)); (Walgreen Reply at 6

(Doc. No. 20).)  The court finds that Walgreen has articulated with adequate specificity

and evidentiary support legitimate, nondiscriminatory reasons for hiring Hand for the

head photo specialist position "which, *taken as true*, would *permit* the conclusion that

there was a nondiscriminatory reason for the adverse action."  <u>St. Mary's Honor Ctr.</u>, 509

U.S. at 509 (emphasis in original).  The burden, thus, shifts back to Gremillion to

demonstrate that the reason offered by Walgreen is not the real reason, but rather a

pretext for discrimination.  Gremillion may accomplish his burden by pointing to

"'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the

proffered explanation."  Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d

1160, 1163 (11th Cir. 2006) (quoting Jackson v. Ala. State Tenure Comm'n, 405 F.3d

1276, 1289 (11th Cir. 2005)).  A reason, however, "is not pretext for discrimination

'unless it is shown both that the reason was false, and that discrimination was the real

reason.'"  Id. (quoting St. Mary's Honor Ctr., 509 U.S. at 515).

Gremillion attempts to show pretext in several ways.  Gremillion alleges that he

possessed "superior qualifications" for the position because (1) he had worked for

Walgreen in a photo shop for a year immediately preceding his application for the job of

head photo specialist, while Hand was not previously a Walgreen employee; (2) he had

never received any disciplinary action or counseling regarding his job performance at

Walgreen; (3) Hand's photo lab experience was "stale" in that Hand had not worked in a

photo lab for the six months preceding Hand's hire at the Perry Hill store and her

supervisory job in a K-Mart photo lab concluded almost two years prior to her hire date

with Walgreen; and (4) Gremillion had to train Hand on the use of cash registers, Pitch

Care Plus (a system Walgreen uses to receive orders), and overall store maintenance.

(Gremillion Resp. at 9-11 (Doc. No. 19).)  Gremillion also asserts that Walgreen's

reliance on Hand's knowledge of the Fuji system as being a superior qualification has no

basis in fact because, although he worked with Gretag photo lab equipment at Walgreen's

South Boulevard store, "the difference in the photo lab equipment brands is not

significant."  (Gremillion Aff. at 1 (Ex. to Doc. No. 19).)  Gremillion attests that "[t]he

16

same principle is involved in running both machines" and that his "skill, knowledge and ability to run the Gretag equipment allowed [him] to run the Fuji equipment."  (Id.)

"[Q]ualifications evidence may suffice, at least in some circumstances, to show pretext." Ash v. Tyson Foods, Inc., ___ U.S. ___, 126 S.Ct. 1195, 1197 (2006) (per curiam).  As to the appropriate test, the Supreme Court in Ash rejected as "unhelpful and imprecise" the Eleventh Circuit's formulation in Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004), that pretext requires a showing that the disparity in qualifications are "'so apparent as virtually to jump off the page and slap you in the face.'"  Id. Although declining to pronounce a precise standard, stating that it was "not the occasion" to do so, the Court cited favorably other language in Cooper, namely Cooper's phraseology that a plaintiff only will be successful in establishing pretext if the "'disparities in qualifications [are] of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"  See id. (quoting Cooper, 390 F.3d at 732). Subsequent to Ash, the Eleventh Circuit has "emphasize[d]" that the latter Cooper standard is the correct one for courts to employ.  Hubbard v. M & H Valve Co., No. 05-11969, 2006 WL 1410147 (11th Cir. 2006); see also Brooks, 446 F.3d at 1163 (applying Cooper, supra).

Here, Gremillion asserts that he possessed superior qualifications because Hand's supervisory experience was "stale," and because he had more seniority as a Walgreen

employee, had an unblemished work record, and had to teach Hand how to perform certain aspects of the job.  The court, however, finds that Gremillion's subjective belief that these attributes rendered him more qualified, in and of itself, is insufficient to avoid summary judgment, even if the court were to agree with Gremillion.  See Brooks, 446 F.3d at 1163-64 ("[O]ur inquiry at the third stage of the McDonnell Douglas analysis of a promotion discrimination claim is not concerned with [plaintiff's] belief that she was more qualified or whether we could conclude that she was better qualified than [the individual promoted].");  Sanchez v. Henderson, 188 F.3d 740, 746 (7th Cir. 1999) (pretext analysis "seeks to uncover the true intent of the defendant, not the belief of the plaintiff").  Gremillion has not submitted any evidence that the criteria which he has chosen to assess himself as superior to Hand were qualifications which Walgreen deemed dispositive or was required to consider.  For instance, there is no evidence in the record that tenure with the company was a factor which Walgreen used to fill open positions. See Dudley v. Wal-Mart Stores, 931 F. Supp. 773, 790 (M.D. Ala. 1996).

The question is whether Gremillion's qualifications are so favorable that the only reasonable conclusion which can be reached is that Gremillion was more qualified than Hand.  See Cooper, 390 F.3d at 732.  Contrary to Gremillion's argument, however, the court finds that a reasonable person could conclude that Hand was better qualified for a managerial position in the photo department than Gremillion, given that Hand actually had supervisory experience in a photo lab and had been employed longer in the relevant

field than Gremillion, who undisputedly had never worked for Walgreen in a supervisory

capacity and had less overall photo lab experience.  Previous managerial experience and

more experience in the photo industry certainly qualify as factors that might motivate a

reasonable employer to select one individual over another.  In other words, the court finds

that an employer would be at liberty to consider more weighty Hand's supervisory

experience and length of employment in the photo developing business than Gremillion's

seniority with the company.  See Pennington v. City of Huntsville, 261 F.3d 1262, 1267

(11th Cir. 2001) ("a plaintiff employee may not establish that an employer's proffered

reason is pretextual merely by questioning the wisdom of the employer's reason," as long

as "the reason is one that might motivate a reasonable employer"); see also Farrokhi v.

Laura Ashley, Inc., 82 F. Supp. 2d 1248, 1252 (D.N.M. 1999) ("Merely because Plaintiff

might evaluate his experience more favorably is irrelevant.  An employer retains the

prerogative to evaluate experience and prefer more and comparable experience to less,

absent a showing that the process is a sham.").

Moreover, Gremillion has failed to rebut Jones' opinion that, given Gremillion's

full-time course work as a student, she did not believe that he could devote the necessary

time and attention to the full-time position of head photo specialist.  Although this reason

is subjective, the Eleventh Circuit has held that an employer may take into account

subjective factors which are legitimate and non-discriminatory so long as the employer

"sets out a 'clear and reasonably specific factual basis upon which it based its subjective

opinion.'"  Roper v. Foley, No. 05-15149, Slip Copy, 2006 WL 1004377, *7 (11th Cir.

April 18, 2006) (quoting Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000)

(en banc)).  Jones was specific in her articulation; she knew that Gremillion worked part-

time in his position as photo specialist, that he also was a full-time student and that the

position he sought was a full-time one.  Accordingly, the court finds that Gremillion has

not demonstrated that this specific reason for not promoting him to the full-time

supervisory position is not the real reason or is false.  See Brooks, 446 F.3d at 1289.

     Finally, even accepting as true that the technical differences between Gretag and

Fuji photo equipment were minimal to non-existent, as asserted by Gremillion in his

affidavit, the court finds that Gremillion's evidence, at best, challenges the wisdom of

Jones' appraisal, not the honesty of her assessment.  See Woodard v. Fanboy, L.L.C., 298

F.3d 1261, 1265 (11th Cir. 2002) (holding that plaintiff cannot show pretext by

presenting evidence that defendant "was mistaken about the facts upon which he based

his alleged non-discriminatory decision.  Instead, a plaintiff must present evidence from

which a reasonable jury could find that the defendant did not honestly believe the facts

upon which he allegedly based his non-discriminatory decision."); Combs, 106 F.3d

at 1543 ("a plaintiff may not establish that an employer's proffered reason is pretextual

merely by questioning the wisdom of the employer's reasons, at least not where . . . the

reason is one that might motivate a reasonable employer").  Gremillion has not presented

any evidence that, even if Jones was mistaken in her understanding of how the Fuji and

Gretag equipment operated, she acted with dishonest intent in concluding that prior experience with the exact machinery in place at the Perry Hill store was desirable.

It is clear that Gremillion must do more than demonstrate that he was better qualified than Hand.  See Roper, 2006 WL 1004377, *6 (citing Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1090 (11th Cir. 2004)).  The court "'must not judge which employee was more qualified, but determine whether any disparity is so great that a reasonable fact-finder could infer that [the employer] did not believe' that the comparator was better qualified."  Id. (quoting Wilson, 376 F.2d at 1090).  This case simply is not one in which the court can conclude that no reasonable person, in the exercise of impartial judgment, could have chosen Hand over Gremillion for the job in question.  See Cooper, 390 F.3d at 732.

Based on the foregoing analysis, the court finds that Gremillion's failure to present evidence that Walgreen's neutral reason for not promoting Gremilliion was a pretext negates any finding of purposeful race discrimination.  Summary judgment, therefore, is due to be entered in favor of Walgreen on this claim.

## VI.  ORDER

Accordingly, for the foregoing reasons, it is CONSIDERED and ORDERED that Walgreen's motion for summary judgment be and the same is hereby GRANTED.

21

A judgment in accordance with this Memorandum Opinion and Order shall be entered separately.

DONE this 28th day of June, 2006.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE